STEPHEN SHANNON, ADMINISTRATOR OF THE ESTATE OF MARY H. SHANNON, DECEASED, PLAINTIFF-APPELLANT, v. MARY COUSINS, ANASTASIA COUSINS AND ALICE THEES, DEFENDANTS-APPELLEES.

Submitted October 14, 1927—Decided January 18, 1928.

Before Justices PARKER, MINTURN and CAMPBELL.

For the plaintiff-appellant, *Robert H. Doherty.*

For the defendants-appellees, *Edward M. Salley.*

PER CURIAM.

The record exhibits three claims in replevin or trover against three different defendants combined into one action. We are not at all clear as to whether they are properly so combined under the provisions of the Practice act of 1912, and do not wish to be understood as approving such a course; but as no objection of this kind has been made, we shall treat the three counts as three separate actions consolidated for the purposes of trial.

The plaintiff is administrator of his deceased wife, Mary H. Shannon, and the three defendants are Mary Cousins, her mother, Anastasia Cousins, and Alice Thees, her sisters. The first count charges Mary Cousins with having wrongfully taken and detained a victrola that was the property of the deceased. The second count makes a similar charge against Anastasia Cousins with reference to a diamond ring, and the third count similarly charges the defendant Alice

Thees with respect to a mink fur coat. The defense in each case was that there had been a gift by the deceased *causa mortis*. It does not plainly appear whether the property was replevied or left in the custody of the defendants, but at the conclusion of the trial the judge treated the matter as an action of conversion and charged the jury if they found for the plaintiff to bring in money verdicts for the respective values of the articles of property as indicated by the testimony.

In support of the defense of gift *causa mortis,* Anastasia was sworn and testified to a conversation between the dead sister and the other sister Mrs. Thees about the fur coat. She said her sister Mrs. Shannon was dying and the other two sisters were at her bedside, and that Mrs. Shannon said to Mrs. Thees, "I am dying, I want you to have the fur coat; go downstairs and bring it up and put it in your things;" whereupon Mrs. Thees did go downstairs, got the coat and put it among her things. This, if believed by the jury, plainly established a complete gift *causa mortis,·* and would settle the ownership of the fur coat.

Next, as to the diamond ring: The defendant Alice Thees was sworn and testified as follows: "Before my sister died she asked my younger sister to hand her her ring from the dresser, and she handed it to her, and she said that she wanted my sister to have her diamond ring. *Q.* What did your sister do? *A.* She held the ring until later on, and she put it in her dresser." This, if believed by the jury, settled the ownership of the diamond ring. There was some corroborative evidence as to the deceased having told her brother about these gifts, but we need not dwell upon it.

As to the victrola, the case is a little different. Anastasia testified to a conversation at which the brother was present, and that her sister Mrs. Shannon told the brother that she had given the victrola to her mother. Alice Thees testified that her mother was, at the time of the trial, in possession of the victrola, and that she came into possession of it in this manner, to wit: "My sister told my younger sister and I that my mother was to have the victrola and anything else in

the house that belonged to her. *Q*. Did your sister say anything about that time, about going to die? *A*. Yes, she said, 'I am going to die.' At the time she gave me the fur coat and the diamond ring to my younger sister, she also told us that mother was to have the victrola." William Cousins, the brother, testified to a conversation with his sister Mrs. Shannon in which she said that she had given Ted the diamond ring and "I am giving Alice my fur coat and mother the victrola."

It will be perceived that nowhere in this evidence does it appear that the mother was present at the time of these declarations by the deceased sister, and, consequently, unless the case comes within the rule laid down in some decisions that a gift *causa mortis* may be effected by delivery to a third person as agent or trustee for the donee, though the gift does not come to the knowledge of the donee and is not accepted by him until after the donor's death. 28 *C. J.* 694. The attempted disposition of the victrola would seem to be altogether testamentary in character, and, therefore, invalid. There is another difficulty, viz.: That nowhere in the evidence does there appear to be anything which can be considered as a delivery and transfer of possession to the donee. The victrola was in the house downstairs. At the time of the trial it was in the same place where it had been before Mrs. Shannon died. There had been a key for the victrola, but, apparently, it had been lost. We doubt whether there would be any effective delivery under such circumstances. See *Besson* v. *Stevens,* 94 *N. J Eq.* (at *p.* 567). But it is unnecessary to decide the point because we are clear that no gift was actually made, and that the deceased failed to do more than express her wishes in a testamentary manner, but orally, that she wished her mother to have the victrola after she was dead. The defense of gift as to the victrola, therefore, was not made out.

This results in an affirmance of the judgment as respects the claim against Anastasia for the diamond ring and Alice for the fur coat, but a reversal with respect to the victrola. Rule may be entered accordingly.

It is urged in the brief that as the two sisters and the mother were joined in the one action as defendants, no one of them was a competent witness to transactions between the deceased and either of the others. But, as we have said, there are in effect three separate actions, one against each party, and each having its own separate count devoted exclusively to the defendant charged therein. The rule stated in section 4 of the Evidence act (*Comp. Stat., p.* 2218) was never intended to exclude the party charged in one of these counts, as a witness to transactions relating to the claim under another count against a different party.